989 F.2d 1202
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Patrick J. MORIARTY, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 No. 91-3258.
 United States Court of Appeals, Federal Circuit.
 Feb. 8, 1993.
 
 Before RICH, Circuit Judge, BENNETT, Senior Circuit Judge, and PAULINE NEWMAN, Circuit Judge.
 DECISION
 PER CURIAM.
 
 
 1
 Patrick J. Moriarty petitions for review of the March 13, 1991 Opinion and Order of the Merit Systems Protection Board (Board), Docket No. DC08468910097, affirming a February 1, 1989 Initial Decision of the Board, in which the Board sustained a decision of the Office of Personnel Management (OPM) denying Moriarty's request to transfer from the Civil Service Retirement System (CSRS) to the Federal Employees Retirement System (FERS). We affirm.
 
 DISCUSSION
 
 2
 The Federal Employees' Retirement System Act, enacted June 6, 1986, provided a six-month open season from July 1, 1987 through December 31, 1987 for individuals subject to CSRS coverage to elect transfer to FERS coverage. OPM later authorized a second six-month open season, lasting until June 30, 1988, to allow for belated elections under certain circumstances. An employing agency could accept a belated election, if: (1) the FERS transfer handbook was unavailable during the transfer period; (2) the individual was unable to elect the FERS for causes beyond his/her control; or (3) administrative errors made in connection with the election needed to be corrected. 5 C.F.R. § 846.204(a) and (b).
 
 
 3
 One factor that employees considered in selecting retirement coverage involved an offset of social security benefits pursuant to the public pension offset (PPO) provisions of the Social Security Act, 42 U.S.C. § 402(c)(2)(A). If an employee retiring from federal service under the CSRS was also eligible for social security benefits as a spouse or survivor, that individual's social security benefits would be reduced by two-thirds of the amount of the benefits payable based upon his/her earnings while in service. All Federal employees covered by the CSRS were subject to the PPO, while certain employees who elected FERS coverage before December 31, 1987 were exempt.
 
 
 4
 Moriarty voluntarily retired from his employment with the Farm Credit Administration (FCA) on December 18, 1987. At the time of his retirement, Moriarty was covered by the CSRS. Four days later, on December 22, 1987, the President signed into law Public Law No. 100-203, which provided in part that the FERS exemption from the PPO would remain intact for those employees who transferred from the CSRS to the FERS prior to January 1, 1988.* On July 11, 1988, Moriarty filed a belated request to the FCA for election of coverage under the FERS, which the FCA denied. Moriarty appealed the FCA's denial to the OPM, and OPM upheld the decision. Moriarty next appealed to the Board, which upheld OPM in both an Initial Decision and in a subsequent reconsideration by the full Board.
 
 
 5
 In his petition to this court, Moriarty argues that he was unable for causes beyond his control to elect FERS coverage within the prescribed time limit, because (1) he was provided with misleading guidance and direction regarding which coverage to elect prior to his retirement, and (2) because he could not have predicted the legislative action that took place only four days after he retired. Moriarty therefore concludes that he is entitled to a retroactive transfer from the CSRS to the FERS pursuant to 5 C.F.R. § 846.204. We disagree.
 
 
 6
 It is undisputed that, prior to his retirement, OPM provided Moriarty with a copy of the FERS transfer handbook. The handbook set forth clearly at pages 30 and 41 the effect of CSRS and FERS retirement coverage on social security benefits received by a spouse or survivor. The handbook also warned that Congress might reconsider the FERS exemption from the PPO.
 
 
 7
 It is also undisputed that OPM issued a June 9, 1987 memorandum to the FCA together with an employee letter titled "A Special Message for Employees Who Are Considering FERS Solely or Primarily to Eliminate the Application of the Public Pension Offset," in which OPM warned that Congress was considering eliminating the FERS exemption from the PPO. The employee letter stated that employees might wish to reconsider or postpone making a transfer decision, if the PPO exemption was to play a role in their decision. Ms. Michele, an FCA Personnel Management Specialist, stated in a January 6, 1989 letter relied upon by Moriarty that, although the FCA "did not issue the [employee] letter to its employees, the information was published in the agency newsletter which is distributed to all employees."
 
 
 8
 The FERS handbook and the information in the employee newsletter put Moriarty on notice prior to his retirement that the FERS exemption from the PPO was subject to change. None of those documents advised employees not to transfer from the CSRS to the FERS. Rather, they merely pointed out that the possibility of a change should be taken into account in making a decision to transfer from the CSRS to the FERS. The uncertainty that existed regarding future legislation is illustrated by Moriarty's statement in his petition to this court that, as of December 18, 1987:
 
 
 9
 neither OPM, FCA, the [Board] or anybody else knew when this legislation was going to be enacted and certainly did not know the direction it would take.
 
 
 10
 In view of the foregoing, we hold that the Board did not err in finding that OPM did not advise Moriarty not to elect, or mislead him into not electing, FERS coverage. If anything, OPM was very up front with Moriarty that they were uncertain about what action Congress would take regarding the FERS exemption from the PPO. Therefore, OPM did not take any actions which rendered Moriarty "unable" to elect transfer from the CSRS to the FERS.
 
 
 11
 Moriarty also has failed to establish that Michele advised him not to elect FERS coverage prior to his retirement. Michele's January 6, 1989 letter in support of Moriarty's claim merely summarized Michele's opinion regarding the information that OPM provided to its employees. The letter does not state that Michele ever specifically advised Moriarty not to elect FERS coverage.
 
 
 12
 We also find unpersuasive Moriarty's arguments that the timing of the enactment of Public Law 100-203 somehow entitles him, pursuant to 5 C.F.R. § 846.204, to transfer from the CSRS to the FERS. Moriarty's resignation on December 18, 1987, four days prior to the enactment of Public Law 100-203, was voluntary. In addition, Moriarty's decision to remain in the CSRS was a choice that he made based upon his own conclusion that Congress would most likely enact legislation eliminating the FERS exemption from the PPO. Although it is unfortunate for Moriarty that he incorrectly speculated as to the exact legislation that Congress would ultimately enact, Congress' enactment of Public Law 100-203 after his retirement cannot be characterized as somehow rendering him "unable" to elect FERS coverage prior to his retirement.
 
 
 13
 We review the Board's decision under a very narrow standard, affirming the decision unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, (2) obtained without procedures required by law, rule, or regulation having been followed, or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1988). Finding no grounds present here, we affirm.
 
 
 
 *
 As discussed previously, OPM later provided an additional six month period for employees to request such a transfer